[S. F. No. 3835.     In Bank.—April 4, 1905.]

MARY J. O'CONNOR, Respondent, v. GRAND LODGE
OF ANCIENT ORDER OF UNITED WORKMEN OF
CALIFORNIA, Appellant.

BENEFIT SOCIETIES—CERTIFICATE—FALSE STATEMENT IN APPLICATION—
CONSTRUCTION AGAINST STRICT WARRANTY—BY-LAWS PART OF CON-
TRACT.—Notwithstanding the application for a certificate of life
insurance in a benefit society purports to contain a warranty of
the truthfulness of the statements as to health therein contained,
and to agree that their falsity shall avoid the certificate, where the
certificate does not expressly mention the application, but expressly
provides that it "is issued subject to, and to be construed and con-
trolled by, the laws of the order," the laws are part of the contract,
and where they make the application also part of the contract, but
expressly provide that any *willfully* erroneous statements or *inten-
tional* concealments of material facts therein shall avoid the certifi-
cate, the contract is to be construed against a strict warranty or
forfeiture of the insurance for mere untruthfulness of the state-
ments.

ID.—WARRANTIES AND FORFEITURES NOT FAVORED IN LAW.—The use of
the term "warranty" in the application, which forms a part only
of the contract, is not conclusive, and where other parts of the
contract show clearly that a strict warranty was not intended, such
parts must govern.  Warranties, on account of their stringent char-
acter, are not favored in law, and no construction will be indulged
which has the effect of a strict warranty of the literal truthfulness
of statements, where the terms of the contract are conflicting or
inconsistent, or render the intention to make such warranty doubt-
ful.  The courts are strongly inclined against forfeitures, and all
the provisions of the contract will be liberally construed in favor
of the assured and against the insurer.

ID.—SUFFICIENCY OF EVIDENCE—VERDICT AGAINST EVIDENCE—WILLFULLY
FALSE STATEMENT AS TO PERSONAL HEALTH.—While the verdict
may be supported as to an unintentional misrepresentation as to
the health of a brother who was afflicted with consumption, the
verdict for the plaintiff is against the evidence where it clearly
shows without conflict that his representation that he had not been
afflicted with rheumatism must have been knowingly and willfully
false.

ID.—BURDEN OF PROOF — DIRECT EVIDENCE NOT REQUIRED — CIRCUM-
STANCES SHOWING WILLFUL FALSEHOOD—KNOWLEDGE. — Although
the burden of proof is upon the benefit society to show not only
that the statement was erroneously made, but also that it was will-
fully so; yet, in making such proof, it is not essential to offer direct
and positive evidence upon the subject.  Whether a misstatement

is willfully made is to be determined from the facts and circumstances surrounding or accompanying the declaration,—the directness and clearness of the question, and the knowledge of the declarant upon the subject of the inquiry.

Id.—Province of Jury—Materiality of Willfully False Statement.—The jury has nothing to do with the materiality of a willfully false statement by the assured, where the parties to the contract have made it material.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   John Hunt, Judge.

The facts are stated in the opinion of the court.

D. S. Hirshberg, for Appellant.

W. H. Bodfish, for Respondent.

LORIGAN, J.—This is an action to recover the sum of one thousand dollars claimed by plaintiff as beneficiary under a certificate issued by the defendant to her son, Richard J. McKeown, on September 3, 1900.   The assured died January 1, 1902.

Defendant contested the right of plaintiff to recover solely upon the ground that in his examination by the medical examiner of defendant her son gave false answers as to his own health and that of one of his brothers, and which false statements it is insisted under the terms of the contract of insurance rendered it void.

The case was tried before a jury, a verdict rendered in favor of plaintiff, and from a judgment entered thereon in her favor defendant appeals upon a bill of exceptions.

The answers relied upon as being false are the answer "No" to the question whether he had ever been affected with the disease or condition of rheumatism, and to the question "Give as accurately as possible the items of family history," to which he responded, under the item "Brother's age," as follows: "31; health good, living; 33, health good, living." At the time these answers were made the evidence conclusively shows that one of his brothers (Thomas) was sick with pulmonary consumption and died a month later of that disease, but there was evidence from which the jury would be warranted in finding that the assured did not know at the

time he gave his answer relative to this brother's condition of health that he was afflicted with the disease. There was also evidence to the effect that in January and February, 1900, and prior to August 27th of that year, which was the date when the medical examination took place, the assured had been afflicted with rheumatism. The evidence upon this subject will be discussed later.

Upon the trial the contention of appellant was, that under the contract of insurance between the defendant corporation and the assured the answers to these questions contained in the medical examination for membership, and which were also attached to the application for a beneficiary certificate as a part thereof, were warranties, and requested the court to instruct the jury that, if they found that these answers, or either of them, to the questions asked, were, in fact, untrue, they should return a verdict for the defendant; that under the terms of the contract, as the assured warranted the truthfulness of his answers, the jury were only concerned with the question whether such answers were true or untrue, and that, if they found they were in fact untrue, it was immaterial whether they were willfully or intentionally so; that if untrue in fact plaintiff could not recover.

The court refused to take this view of the contract, or to give such instructions, but, on the contrary, instructed them as follows: "The view that I take of the law upon the subject is this: Any erroneous statement made by the applicant, or any matter which he conceals or omits to disclose, does not, if he is otherwise entitled to recover, operate to defeat recovery of the plaintiff, unless said statement was willfully made, or unless said concealment or omission to disclose the facts suppressed was an intentional concealment or omission." Referring to the alleged facts as to the applicant having had rheumatism and his brother consumption, the court further said: "If you are satisfied that such misrepresentation was so made, and willfully made, or intentionally made, then the plaintiff, his mother, is not entitled to recover. But if you are not satisfied of that fact, then your verdict should be for plaintiff for the amount claimed."

The first question presented for consideration and the main point on this appeal is as to the accuracy of these instructions so given, and this must be determined from a consideration of

the terms of the contract of insurance entered into between the assured and the defendant corporation. As bearing on this question is appears that the constitution of the defendant grand lodge provided that no member of the order could receive the benefits of the order—a right to participate in the beneficiary fund evidenced by the issuance of a beneficiary certificate—except on taking the workman degree in a subordinate lodge. In applying for membership in such subordinate lodge it was required that the applicant should submit to a medical examination, make answer to certain questions concerning his health and that of members of his family, and to enter into certain written agreements.

Pursuant to these requirements, in his application for membership in the local lodge (Harmony Lodge, No. 9, of San Francisco) August 27, 1900, the applicant, McKeown, declared in writing that "Having become acquainted with the objects of your order, I hereby make application for membership in your lodge, and do declare upon my honor as a man that the statements by me subscribed herein are each and every one of them true. . . . I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statement made therein, or to the medical examiner, or any concealment of facts by me in this application . . . shall forfeit the right of myself and my family, or dependents, or beneficiaries to all benefits and privileges therein."

Accompanying this application to the local lodge, and constituting part of it, were the questions and answers asked and given upon the medical examination (including those in dispute) signed by the applicant and certified to by the medical examiner of the local lodge, and this application thus signed, certified, and also approved by the grand medical examiner, formed the basis for an application to the grand lodge for the issuance of a beneficiary certificate after the applicant had received the workman degree in the local lodge.

This application for a beneficiary certificate is made to, and, if granted, is issued by, the grand lodge, and with reference to the application therefor it is provided in the constitution of said grand lodge that "Application for beneficiary certificate. Each member receiving the Junior Workman degree, and applying for the Workman degree, shall

make application for the rights, privileges and benefits of the order, and in substance as follows, which shall be attested by the recorder of the subordinate lodge, with the seal attached; such application shall constitute part of the contract of each member with the order, and if the applicant shall willfully make any erroneous statements therein, or shall intentionally conceal, or omit to disclose, any fact material thereto, his beneficiary certificate shall be void." This provision of the constitution also sets forth the form of application to be used in applying for said beneficiary certificate, and was the one used by McKeown in making his application to the grand lodge. In it the applicant agrees "that compliance on his part with all the laws, regulations and requirements which are, or may be enacted by said order is the express condition upon which" he is "to be entitled to participate in the beneficiary fund." It also contains the following: "I certify that the answers made by me to the questions as propounded by the medical examiner of this lodge, which are attached to this application and form a part thereof, are true, and if it should thereafter appear that I have made false statements in any particular, notwithstanding that I may in the mean time pay all my regular assessments, it is hereby agreed on my part that said false statements shall render null and void forever my beneficiary certificate, to be hereafter issued upon the basis of this agreement and the medical examiner's report attached to this application." Under this form of application the only statements which the applicant makes are, that he has applied for the workman degree in a local lodge, and that the answers to the questions propounded by the medical examiner of such lodge, and which are attached to the application for the beneficiary certificate and form a part of it, are true; there are no statements of any other facts made or provided for in the application.

The beneficiary certificate which is issued upon such application by the grand lodge recites that "this certificate is issued subject to and is to be construed and controlled by the laws of the order." In such certificate there is no reference made to the application or to any of the matters contained in it, nor is reference made to any particular law of the order which is to control it, or under which it is to be construed.

These are the only matters pertinent to a consideration of what the contract between the parties was, as affecting the question whether the instructions which the court gave to the jury were or were not correct.

It is insisted by the appellant that the contract of insurance consists of the application for membership in the local lodge, which embraced the medical examination as a part thereof, the application for the beneficiary certificate which is attached to such medical examiner's report, and the beneficiary certificate. So contending, it is claimed that as he "warranted the truthfulness of his statements," which included those that he had never been affected with the disease or condition of rheumatism, and that the health of his brother Thomas was good, he was bound by the literal truth of his answers in those particulars; that his warranty as to the truth of all answers was the essential and agreed basis of the contract of insurance, and that the only matter for consideration by the jury was whether or not the answers to the questions so warranted were true in point of fact; that under the warranty the truth of the facts warranted was a condition precedent to recovery, and that it was a false quantity and wholly unimportant whether such statements were wilfully or intentionally untrue when made by the applicant or not, and that, under the warranty in the contract, inquiry upon this latter point was foreclosed.

We make no question but that if the contract of insurance is to be discovered from an examination solely of the matters referred to by the applicant, its contention as to the scope of inquiry proper for the jury might be correct, and that only the question of the truth of the statements could be inquired into. Parties to insurance contracts, as in other contracts, are at liberty to agree to such terms and conditions as they please, and the courts can only give effect to the contracts as they make them. So that where, in a contract of insurance, the applicant warrants the truthfulness of his statements, and such warranty forms the sole basis for the contract, and it is stipulated that any untrue statement shall avoid the policy, his right to recovery will be defeated should it appear that such statements are in fact untrue. Under such circumstances it is immaterial that the applicant believed his statements to be true, or that they were made in good faith; and

it is equally unimportant whether such misrepresentations were either intentionally or accidentally made. He warranted their truthfulness and is bound by the warranty. (2 Bacon on Benefit Societies, 3d ed., sec. 197.)

But the contract of insurance in the case at bar is not made up solely of the documents referred to by appellant. There also enter into it, as an important and substantial element, the constitution and by-laws of the order. This is apparent from the language of the beneficiary certificate itself, which provides that it "is issued subject to and is to be construed and controlled by the laws of the order."

But even if there were no such express provision, the general rule of law is that in contracts between benefit societies and their members, such laws enter into and are considered as a part of them. (Niblack on Benefit Societies, sec. 136; Bacon on Benefit Societies, 3d ed., sec. 161; *Haas* v. *Mutual Relief Assn.*, 118 Cal. 9; *Grand Lodge Ancient Order United Workmen* v. *Gandy*, 63 N. J. Eq. 692; *Ancient Order United Workmen* v. *Jesse*, 50 Ill. App. 105; *Robson* v. *United Order of Foresters*, (Minn.) 100 N. W. 381; 3 Am. & Eng. Ency. of Law, 1081.)

So that in construing the contract in question there must be taken into consideration not only the matters referred to by counsel for appellant as constituting the contract, but also the constitution of the grand lodge as the law of the order and as part of the contract. All these papers are *in pari materia*, and are to be read together as constituting the entire contract.

When so considered, we think it is apparent that in determining the rights of the assured under the beneficiary certificate, it was not intended that the statements made in the medical examination, and which accompanied his application therefor to the grand lodge, were to be considered as warranties, although so denominated. The use of the term "warranty" in the application in the medical examination, and which constitutes only part of the contract, is not conclusive, and even though the declaration is made therein that the statements shall be deemed warranties, yet, if it appears from other parts of the contract that a strict warranty was not intended, such parts must govern. Warranties, on account of their stringent character, are not favored at law.

No construction will be indulged in by courts to support
them.   On the contrary, where the terms of the contract are
conflicting or inconsistent, or are such as to render it doubt-
ful whether it was intended by the parties that the assured
should be bound by the literal truth of his statements, no
construction will be indulged in which has that effect.   The
clearest and most unequivocal language is necessary to create
a warranty.   As the courts are strongly inclined against for-
feitures, all the provisions of the contract will be liberally
construed in favor of the assured and against the insurer.
As is said in *National Bank* v. *Insurance Co.*, 95 U. S. 673:
"When the policy of insurance contains contradictory pro-
visions, or has been so framed as to leave room for con-
struction, rendering it doubtful whether the parties intended
the exact truth of the applicant's statements to be a condition
precedent to any binding contract, the court should lean
against that construction which imposes upon the assured the
obligation of a warranty.   The company cannot justly com-
plain of such a rule.   Its officers prepared the policy for the
purpose, we shall assume, both of protecting the company
against fraud and of securing the just rights of the assured
under a valid contract of insurance.   It is its language which
the court is invited to interpret, and it is both reasonable and
just that its own words should be construed most strongly
against itself."   While this language was used in considering
a policy of fire insurance, the same rule of interpretation
applies with relation to life-insurance contracts.   (Bacon on
Benevolent Societies, 3d ed., secs. 198, 199; Niblack on Mutual
Benevolent Societies, sec. 143; *Ætna Ins. Co.* v. *Simmons,*
49 Neb. 811, cases cited; *Fitch* v. *American Life Ins. Co.*, 59
N. Y. 566;[1] *Price* v. *Phœnix M. Ins. Co.*, 17 Minn. 497;[2]
*Muller* v. *Mutual Ben. L. Ins. Co.*, 3 Iowa, 228;[3] *Jennings*
v. *Supreme Council L. O. B.*, 81 App. Div. 76; 81 N. Y. Supp.
99; *Robson* v. *United Order of Foresters,* (Minn.) 100 N. W.
381; *Mouler* v. *American Life Ins. Co.*, 111 U. S. 341.)

Applying this rule to the construction of the contract here
involved, it must be held that, taking into consideration all
its provisions, it was not intended by the grand lodge that
the literal exact truthfulness of the answers of the assured

[1] 17 Am. Rep. 372.        [3] 7 Am. Rep. 122.
[2] 10 Am. Rep. 166.

to the medical examination should be a condition precedent to the validity of the beneficiary certificate which it issued.

Conceding that the warranty contained in the medical examination which accompanied McKeown's application for membership to the local lodge was carried into the contract with the defendant grand lodge—though it may be mentioned in passing as a somewhat significant fact that the word "warranty" is not found or carried forward in the language employed in the form of application for a beneficiary certificate provided in the constitution of the order— yet this was only a part of the contract. Another part of the contract were the laws of the order. While the warranty stipulated for the literal truth of the statements in the medical examination as part of the application to the grand lodge for a beneficiary certificate, and the applicant agreed that any false statement therein should render such beneficiary certificate void, the constitution of the order provided that such certificate should only be void for erroneous statements willfully made, or for intentional concealment of or omission to declare material facts, and the certificate issued provided that the rights of the parties under it were to be construed and controlled by such laws. Thus we have a contract containing inconsistent provisions, one part stipulating that the answers are literally and absolutely true, and the contract void if they are found to be false; while it is elsewhere stipulated that the contract shall be void only if they are willfully erroneous. The provisions of the contract are therefore inconsistent and conflicting, leaving it in doubt as to what the intention of the parties was; whether it was intended that the answers should be literally and exactly true as a condition precedent to recovery upon the certificate, or only that they should not be willfully erroneous. This doubt as to the intention of the parties is created by the defendant company which prepared the terms of the contract, and, under the familiar rule of construction which is supported by all authorities, this doubt must be resolved against it, as the party whose language it becomes necessary to interpret, and such a construction must prevail as relieves the assured from the obligation arising from a strict warranty. We are satisfied from these considerations that the lower court properly con-

strued the contract between the parties and that the instructions as given were correct.

It is insisted by appellant that the constitution of the order did not prevent it from entering into a contract requiring and providing for the enforcement of a warranty. This contention could only apply if the constitution of the order did not enter into the contract between the assured and the grand lodge as part of it. But, as we have shown that it does so enter, and that the constitutional provision particularly referred to by its language qualifies the express warranty, which, but for such provision would otherwise control, there is no force in the point.

We have discussed the proper construction of this contract, and the correctness of the instructions given by the lower court, in view of a new trial, which must be ordered.

The issue submitted to the jury was whether the assured had given willfully erroneous answers at the medical examination concerning the condition of his brother's health, and his own previous condition as to having been affected with rheumatism. The jury by a verdict in favor of plaintiff necessarily found in her favor that the assured had, at least, not willfully made erroneous statements as to either of these matters. As far as the statement concerning the health of his brother is concerned, as we have heretofore said, the jury. was warranted, under the evidence on that point, in concluding that the assured, when he answered the question, did not know or believe that his brother was in ill-health or afflicted with the disease of which he died, and hence his statement to the contrary was not willfully erroneous. Upon the other matter, as to whether the assured had himself been affected with rheumatism in January and February prior to the date of the medical examination, the evidence presents an entirely different situation. In that regard, it is urged by appellant that the verdict of the jury, in as far as it assumed to find that the assured had not been, in fact, affected with rheumatism, or that his answer that he had not been so affected was not willfully erroneous, was contrary to the evidence. We think this contention must be sustained. Upon the fact that he had been so affected, and knew it, the evidence is all one way; there is no conflict. The assured lived with his mother, the plaintiff beneficiary, and the evidence shows,

both from the admissions of the assured and the statement
of his mother, that he had been affected with rheumatism
during the period claimed, and that he had gone to Byron
Springs for relief.   There was also evidence that in January
and February, 1900, he received sick benefits for several
weeks from another order to which he belonged, and that he
informed visiting brothers of such order that he was afflicted
with rheumatism.   Under these facts, if the verdict of the
jury is to be considered as a finding that the assured made
truthful answer when he stated that he had not been
afflicted with rheumatism, the verdict of the jury is contrary
to the uncontradicted evidence upon this point.   Neither
can the verdict be sustained on the theory that the jury found
that, notwithstanding he did have rheumatism, that his state-
ment to the contrary was not willfully erroneous.   There was
no warrant in the evidence for such a finding.

The burden, it is true, was upon the defendant corporation
to show, not only that this statement was erroneously made,
but that it was willfully so.   (2 Bacon on Benefit Societies,
3d ed., sec. 469; *Supreme Lodge K. and L. of H.* v. *Woll-
schlager* 22 Colo. 213; *Grangers Life Ins. Co.* v. *Brown,* 57
Miss. 308;[1] *Piedmont etc. Ins. Co.* v. *Ewing,* 92 U. S. 377;
*Clapp* v. *Massachusetts Ben. Assn.,* 146 Mass. 526.)   In mak-
ing such proof it was not essential to offer positive and direct
evidence upon the subject.   Whether a misstatement is will-
fully made is to be determined from the facts and circum-
stances surrounding or accompanying the declaration—the
directness and clearness of the question and the knowledge
of the declarant upon the subject of the inquiry.   The evi-
dence at bar shows that the medical examiner made particular
inquiry upon all of the questions contained in the medical
examination, and, among others, as to whether the assured
had been affected with rheumatism, and that he answered
"No"; it shows that as a fact he had been affected with it
for some weeks, and within the year prior to the examination,
and that he knew that he had been so affected.   It was a
matter about which, from his positive knowledge upon the
subject, he could not be mistaken, and concerning which he
was directly interrogated, and to which his attention was
particularly drawn.   There was nothing in the evidence from

[1] 34 Am. Rep. 446, and note.

which the jury could infer that his statement relative to this matter was not willfully erroneous; on the contrary the uncontradicted evidence presented a situation where no other reasonable or logical inference could be deduced than that the statement was willfully erroneous; the statement was erroneous in point of fact, and erroneous to the knowledge of the assured, and the evidence offered no warrant for the conclusion that, although the assured knew the fact and misstated it in the face of such knowledge, that he merely unintentionally did so.

The court will not disturb a verdict where there is some evidence to sustain it, but this is not the situation here. Here there is not only no evidence to sustain the verdict, but it is against the uncontradicted evidence on the subject. The verdict was doubtless rendered upon the assumption by the jury that the statement of the assured relative to rheumatism was concerning a matter not material to the risk—that it was unimportant. But with this the jury had nothing to do. The parties to the contract had made it material, and the only question for the jury was, whether the assured had been in fact so affected, and if he had been, was his unqualified and square denial of the fact a willfully erroneous misstatement?

Some errors predicated upon rulings of the court as to the admission and rejection of testimony are also urged by appellant as grounds for a reversal. The rulings were clearly right, and no particular discussion concerning them is necessary.

The judgment is reversed and a new trial ordered.

Henshaw, J., and Beatty, C. J., concurred.

ANGELLOTTI, J., and SHAW, J., concurring.—Upon further consideration, we have reached the conclusion that the instructions of the court below as to the effect of erroneous statements made by the insured in his answers to questions of the medical examiner, attached to his application for a beneficiary certificate, were correct. We concur in the opinion and in the judgment.

Van Dyke, J., concurred in the judgment.