[Civ. No. 5656. Third Appellate District.—March 9, 1937.]

MINNIE MAY WILSON, Respondent, v. MARYLAND CASUALTY COMPANY, BALTIMORE (a Corporation), Appellant.

Hinsdale, Otis, Johnson & Hughes, Donald Seibert and Robert W. Jennings for Appellant.

Lowell & Lowell for Respondent.

PLUMMER, J.—Plaintiff had judgment, based upon an accident policy of insurance, from which judgment the defendant appeals.

The answer of the defendant admits the execution and delivery of the policy, and then sets up an affirmative defense of certain untruthful statements contained in the application for the policy to wit:

1st. That at the time of making the application the plaintiff represented and warranted that she had no other accident or health policy;

2d. That plaintiff's application for insurance had never been declined;

3d. That the defendant had not within five years had medical or surgical advice or treatment, etc.

It is further alleged that those answers were false; that the answers as contained in the application constituted representations and warranties which induced the appellant to enter into and issue its contract of insurance. The questions and answers are as follows:

"No. 10. Q. What accident or health insurance have you in other companies or associations? A. None. No. 12. Q. Have you ever been declined, postponed or rated up for life or health insurance? A. No. No. 22. Q. Have you, within the past five years, had medical or surgical advice or treatment or any departures from good health? A. No."

The plaintiff testified that she answered the three questions truthfully and correctly, stating that she had accident and health insurance in another company; that a second company had declined to issue insurance to her; and that she had, within five years, had surgical and medical advice, etc. The agent who solicited the insurance testified that he wrote down the answers just as they were given to him. The court, however, found that the answers were correctly given by the plaintiff, but that the soliciting agent, named "Parker", incorrectly transcribed the same. The record shows, however, that after the answers were all transcribed or written into the application the plaintiff signed the same, even though she told the soliciting agent that the answers as written, were not correct. In due time the policy came back from the company, having attached thereto a copy of the application containing the questions and answers just as written in the original application. The plaintiff read the same, testified that the answers were not correct, but kept the policy upon the statement, as she testified, that the soliciting agent Parker, told her that the incorrectness of the answers was immaterial.

The policy contains, among other things, the following: "No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid

unless approved by an executive officer of the Company and such approval be endorsed hereon." Also, the following: "Provision No. 24: Do you agree that the falsity of any answer in this application for a policy shall bar the right to recovery thereunder, if such answer is made with intent to deceive or materially affect either the acceptance of the risk or the hazard assumed by the Company?" To which the answer "yes" is appended. This provision is in the application signed by the plaintiff.

The court found that there was no intent to deceive; but the question of materiality of the misrepresentations contained in the application was not passed upon by the trial court. However, the testimony shows that such matters are always considered by an insurance company before issuing a policy, and therefore, that the same constitute material facts in determining whether a policy should or should not be issued to the applicant.

As we have stated, the plaintiff signed the application after reading the same and calling the attention of Parker, the soliciting agent, to the incorrectness of the answers, and that upon the delivery of the policy of insurance plaintiff again read the same, notified Parker of the incorrectness of the answers, but kept the policy upon his statement that they were immaterial. The court found, among other things, that the plaintiff notified the defendant of the incorrectness of the answers.

The appellant contends first: That there is no evidence that Parker had the authority of the defendant to make any waiver of the conditions of the policy, or to represent to plaintiff that any part of said policy, application or answers was immaterial; second: That there is no evidence that the answers set down by Parker did not deceive the defendant company; third: That there is no evidence that plaintiff notified the defendant company of the errors in the answers to any of the questions set down in the policy, and signed by the plaintiff; fourth: That there is no evidence that plaintiff was assured by the defendant company that said answers, as so set down and so signed by her were immaterial, or the plaintiff might safely keep said policy or rely thereon; fifth: That there is no evidence that defendant company had any knowledge of the falsity of the answers as so signed by plaintiff, or that the defendant waived the erroneous answers

to any of said questions, or agreed to be bound by said policy, notwithstanding the erroneous answers; sixth: That the evidence shows affirmatively that plaintiff was guilty of implied complicity in the action of Parker in writing false answers, and such showing negatives the truth of the finding that plaintiff acted in good faith, without any intent to deceive the defendant.

The respondent's reply to the appellant's contention relates only to one answer, to wit: That relating to the securing of medical or surgical advice within the period of time limited in the answer. No answer is made to the appellant's contention as to the misrepresentation concerning the fact of the plaintiff having other accident and health insurance, and also, having had an application therefor refused by another company.

The finding of the court that the plaintiff notified the defendant insurance company of the incorrectness of the answers as transcribed by the soliciting agent, is squarely answered to the contrary in the case of *Sharman* v. *Continental Ins. Co.*, 167 Cal. 117 [138 Pac. 708, 52 L. R. A. (N. S.) 670], in which case the court, in its opinion, used the following language: "It is not claimed here that the representations or statements of Wade were communicated to the general agent of the defendant or that he had any knowledge in fact of the existence of the conditional contract of sale between plaintiff and Cochran, or that the statement in the policy that plaintiff was the sole and unconditional owner of the property insured was not true. The contention solely is that because Wade was agent of the company—the ostensible agent at least—his knowledge bound the defendant. But Wade was merely a soliciting agent of the defendant. He had no authority, actual or ostensible, to waive conditions in the policy. This was not within the scope of any apparent authority he possessed, and his knowledge of the true condition of the title of plaintiff not communicated to the general agent of the company, was not the knowledge of the latter. The extent of his duties was merely to solicit insurance and send in applications therefor to the general agent of the defendant. He had no authority to consummate the contract of insurance and issue the policy, and it is only an agent of this character who could waive conditions notwithstanding the apparent limitations of the power of all agents to waive

the conditions or stipulations of a policy. A soliciting agent could not. (*Iverson* v. *Metropolitan Life Ins. Co.*, 151 Cal. 746 [13 L. R. A. (N. S.) 866, 91 Pac. 609]; *Fidelity etc. Co.* v. *Fresno Flume etc. Co.*, 161 Cal. 466, 27 L. R. A. (N. S.) 322, 119 Pac. 646]; *McIntosh* v. *Agricultural Fire Ins. Co.*, 150 Cal. 440 [119 Am. St. Rep. 234, 89 Pac. 102]; *Raulet* v. *Northwestern Ins. Co.*, 157 Cal. 213 [107 Pac. 292].)''

In the instant case, Parker was simply a soliciting agent and had no authority, actual or ostensible, to waive any of the conditions of the policy; he had no authority to consummate the contract and issue a policy of insurance. All the authority he possessed was to take the application, transmit it to the defendant, and when it was returned, deliver it to the plaintiff.

In the case of *Porter* v. *General Accident & Assurance Corp.*, 30 Cal. App. 198 [157 Pac. 825], the court had before it a similar question, and held as follows: ''One who has authority to take applications receive and receipt for premiums, forward them, receive policies from the Company, and deliver them after countersigning them, has no power to bind the Company by contract of insurance in any other way than by delivery of a policy issued by the Company.'' The court then goes on to define the powers of a general agent.

In the case of *Hargett* v. *Gulf Ins. Co.* (*Firemen's Ins. Co., etc.*, and *Monarch Fire Ins. Co., etc.*), 12 Cal. App. (2d) 449 [55 Pac. (2d) 1258], the court had before it the question of waiver, where the policy contained a paragraph similar to the paragraph which we have quoted from the policy issued to the plaintiff, and there held as follows: ''Even though it had been established that Rose was a general agent, the evidence would still be insufficient to show that the companies waived compliance with the conditions of the policies. By the terms of the policies no officer or agent had authority to waive any provision or condition of the policies except by writing endorsed thereon or attached thereto. These provisions may not be ignored. They are valid and must be given effect the same as any other provisions.'' (Citing a number of cases.)

In the recent case of *Taylor et al.* v. *American Liability Co.*, 48 Fed. (2d) 592, the Circuit Court of Appeals of the Sixth District had before it a policy where the questions in the application for insurance did not contain truthful answers,

and held as follows: "The defense is that the soliciting agent made no inquiries whatever with reference to this subject-matter, but himself inserted the answers knowing them to be false, and that the insured did not read the policy nor know of the representations which he was apparently charged with making. This defense cannot prevail. The case is, we think, controlled by our decisions in *Columbian Nat. Life Ins. Co.* v. *Harrison*, (C. C. A.) 12 Fed. (2d) 986, and *Maryland Casualty Co.* v. *Eddy*, (C. C. A.) 239 Fed. 477. The policy holder is held strictly to knowledge of the contents of his policy (*New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, 534 [6 Sup. Ct. 837, 29 L. Ed. 934]; *Lumber Underwriters* v. *Rife*, 237 U. S. 605, 609 [35 Sup. Ct. 717, 59 L. Ed. 1140]; *Wyss-Thalman* v. *Maryland Casualty Co.*, 193 Fed. 55 (C. C. Pa.); *Conner* v. *Manchester Assur. Co.*, (C. C. A. 9) 130 Fed. 743 [70 L. R. A. 106]; *Louis P. Hyman & Co.* v. *United States Cast Iron P. & F. Co.*, 225 Ky. 510 [9 S. W. 226]; *Metropolitan Life Ins. Co.* v. *Freedman, Exec.*, 159 Mich. 114 [123 N. W. 547, 32 L. R. A. (N. S.) 298]; the cases already cited from this circuit (and many others), and retention of it constitutes an adoption of the application and of the representations upon which such policy was issued. Nor is knowledge of the soliciting agent of the falsity of the answers to be imputed to the principal. By so falsifying the application or schedule of warranties, if such was the fact, the agent would make himself a party to a fraud upon the company, and his knowledge is not then to be imputed to the principal, although under the statutes of some states not applicable here, the defense may not be available to the insurer. See *New York Life Ins. Co.* v. *Goerlich*, 11 Fed. (2d) 838 (C. C. A. 6); *Mutual Life Ins. Co.* v. *Hilton-Green*, 241 U. S. 613 [36 Sup. Ct. 676, 60 L. Ed. 1202]; and compare: *Thomson-Houston Elec. Co.* v. *Capitol Elec. Co.*, 65 Fed. 341 (C. C. A.), and *Kean* v. *National City Bank*, 294 Fed. 214, 219 et seq. (C. C. A. 6.)" This case also holds that knowledge conveyed to the soliciting agent is not knowledge to the company.

In the case of *Layton* v. *New York Life Ins. Co.*, 55 Cal. App. 202 [202 Pac. 958], after a statement to the effect that whether the agent of the company is a general agent or soliciting agent, or merely a medical examiner, incorrectly transcribes answers, the company is estopped to assert their

falsity, goes on then to show that if the insured has knowledge of the falsity and accepts the policy under such conditions, the insured becomes a participant therein and no recovery can be had upon the policy. We quote therefrom as follows: ''Notwithstanding the justice of this rule, it is the statement of only a part of the law of the case, and is subject to the limitation that there must be no complicity on the part of the insured, actual or implied. The element of continued good faith enters into such transactions. The policy of insurance in this case was almost immediately delivered to Layton. It was his duty to read it, and we may assume that he did so. He knew, therefore, that the application and the certificate of the medical examiner, each of which was an integral part of the policy and the consideration therefor, contained two very material and vital statements that were false. His legal and moral duty was then to notify the company of the fraud that had been perpetrated. By his silence he virtually approved of the act of the medical examiner and became responsible for it. By his conduct he made Dr. Cleland his agent as well as the agent of the company, and the forfeiture of the policy is the result. (*Goldstone* v. *Columbia Life etc. Co.*, 33 Cal. App. 119, 123 [164 Pac. 416].) To the same effect is the decision of our Supreme Court in *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204 [142 Pac. 51], and the opinion of Mr. Justice Field in *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519 [29 L. Ed. 934, 6 Sup. Ct. Rep. 837], which seems to be the leading case on the subject, and which was affirmed in *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613, 624 [60 L. Ed. 1202, 36 Sup. Ct. 676] ; see, also, Rose's U. S. Notes. Where one holds a policy, referring in apt terms to the warranties and representations contained in the application annexed, for a reasonable time, he is conclusively presumed to know the contents of the contract, and the untruthful answers plainly written in the application. He is thereby estopped to assert that he had no knowledge on the subject. (*Modern Woodmen* v. *Angle,* 127 Mo. App. 94, 116 [104 S. W. 297, 304].) Even though the false answers were written by the examiners of the company without the knowledge of the assured, but the latter has the means at hand to discover the falsehood, and negligently omits to use them, he will be regarded as an instrument in the perpetration of the fraud, and no recovery

can be had on the policy. (*Forwood* v. *Prudential Ins. Co.,* 117 Md. 254, 259 ]83 Atl. 169, 171]; *Providence Life Assur. Soc.* v. *Reutlinger,* 58 Ark. 528, 543 [25 S. W. 835, 840].)''

In the case of *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519 [6 Sup. Ct. 837, 29 L. Ed. 934], the court held that where false answers were written in the application by the agent, and the applicant signed the application without reading the same, that the policy was void. This case is relied upon and approved in the Taylor case, *supra.*

In the case of *Maggini* v. *West Coast Life Ins. Co.,* 136 Cal. App. 472 [29 Pac. (2d) 263], where the court instructed the jury that it was incumbent upon insured to prove that the concealment was made with intent to deceive the insurance company, it was held that such an instruction was erroneous where the insured had knowledge of the falsity of the statements contained in the application. The language of the court in that case is as follows: ''One other assignment of error requires but brief consideration. At the request of the respondent the jury was instructed that it was incumbent upon the defendant to prove by the preponderance of evidence *not only* that the answers of the insured were untrue *but also* that they were made with the intention of concealing his true state of health so that he might deceive the insurance company. Upon the same issue the jury was instructed that a presumption of intent to deceive is only made when statements are made with knowledge of their falsity and that the burden was upon the insurer to show that the misrepresentations were wilfully made and that if the jury found that the insured 'did not make wilfully false statements to the questions asked of him by the medical examiner for the defendant insurance company, then you are instructed that said defendant has no right to cancel or rescind the policies sued upon'. The rule in this respect is statutory. Section 2562, Civil Code, reads: '*Effect of concealment.* A concealment, whether intentional or unintentional, entitles the injured party to rescind a contract of insurance.' Under this section an intent to deceive on the part of the insured is immaterial, and such intent is presumed when the insured had knowledge of the falsity of the statements. (*Whitney* v. *West Coast Life Ins. Co.,* 177 Cal. 74, 80 [169 Pac. 997].)''

In *McEwen* v. *New York Life Ins. Co.,* 23 Cal. App. 694 [139 Pac. 242], it was held that the materiality of the

representations was a question for the court and not for the jury. In that case the representations were in writing, and under such circumstances it was held that the interpretation of the writing was for the court, and when so interpreted, its materiality was to be determined by the court, and whether the insurance company was, by reason thereof, influenced in forming its estimate of the advantages or disadvantages of the proposed contract. See, also, *McEwen* v. *New York Life Ins. Co.*, 42 Cal. App. 133 [183 Pac. 373], and *O'Connor* v. *Grand Lodge*, 146 Cal. 484 [80 Pac. 688]. In the case at bar the court made no finding as to the materiality of the misrepresentations.

Our attention has been called to the case of *Weiss* v. *Policyholders' Life Ins. Assn.*, 132 Cal. App. 532 [23 Pac. (2d) 38]. In that case, however, the appellant was unable to read the application, and of course under such circumstances could not be accused of complicity in their misrepresentations, and in that particular, distinguished the case from that of *Layton* v. *New York Life Ins. Co., supra.* The fact that the soliciting agent, Parker, countersigned the contract is of no moment. It only authenticated the policy as delivered to the appellant, and in nowise modified any of its provisions or indicated any authority on his part to modify any of its conditions.

Section 331 of the Insurance Code reads as follows: "A concealment, whether intentional or unintentional, entitles the injured party to rescind a contract of insurance."

A number of other cases have been cited by the respective parties, but what we have said we think conclusive, and that the judgment must be reversed, even though the answer relating to whether the plaintiff had or had not had medical and surgical advice within the time limit, in the manner of the questions set forth herein, be held material. It cannot be questioned that the fact of other and similar insurance was and is a material consideration in issuing a subsequent or additional policy of like force and effect, as it raises the question of overinsurance.

The judgment is reversed.

Pullen, P. J., and Thompson, J., concurred.