[Civ. No. 4977.   Fourth Dist.   Mar. 28, 1956.]

DOUGLAS ARTHUR COLE, Respondent, v. A. A. CALAWAY, Appellant.

JOHN MEACOCK, Respondent, v. A. A. CALAWAY, Appellant.

Frank H. Marvin and John D. Chinello for Appellant.

Orville A. Schulenberg for Respondents.

GRIFFIN, J.—In these two actions, consolidated for trial and on appeal, plaintiffs and respondents Douglas Arthur Cole and John Meacock, individually and as representatives of Underwriters at Lloyd's London subscribing certificates LC-17341, LC-20852 and LC-22530 respectively, brought this action in declaratory relief against defendant and appellant A. A. Calaway, a medical doctor (hereinafter referred to as defendant) et al. to declare the rights and duties of the respective parties under said certificates and to declare them null and void under certain claimed breaches of warranty by defendant in misrepresenting or concealment of facts in his application to obtain insurance in reference to malpractice coverage through Pacific Marine Insurance Agency (hereinafter referred to as Pacific). A copy of the application or "proposal form" and certificates of coverage were attached to the amended complaint. It alleged generally that Pacific was a corporation duly organized and existing under the laws of California and authorized to carry on business as a "surplus line broker"; and authorized to enter into and execute the certificates of insurance described on behalf of plaintiffs. The proposal form for each of the three policies for three successive annual periods of coverage from December 15, 1950, to December 15, 1953, and signed by de-

fendant, recites: "No claims or suits for professional services rendered, or which should have been rendered have been made against me except as follows: Instrument broke during tonsilectomy several years ago. No payment made." Defendant secured a reduction of 15 per cent in his insurance premium because his application showed that no suits had been filed nor claims made against him for malpractice. The amended complaint alleges that said warranties were untrue in that "defendant had had several claims and/or suits filed against him, alleging acts of malpractice upon his part; that if plaintiffs would have known of these facts previous to the issuance of said insurance certificates, no certificate of insurance would have been issued by plaintiffs to defendant"; that "said warranties were made to and did induce plaintiffs to issue the same through" Pacific; that during the month of June, 1953, or thereabouts, plaintiffs learned that previous to December 13, 1950, "defendant had had several claims and/or suits filed against him, alleging acts of malpractice upon his part;" that upon learning thereof plaintiffs did, on July 3, 1953, give defendant a written notice of rescission of said certificates of insurance along with the return of all moneys paid by defendant as premiums; that plaintiffs claim all obligations on their part, as therein provided, have terminated, which defendant disputes, and plaintiffs having elected to terminate said insurance certificates, desire a declaration of their rights and duties in the premises, including a declaration that said insurance certificates are and were null and void *ab initio.*

Defendant answered and claimed that the proposal form was filled out by the insurance agent for Pacific and that defendant signed it without reading it. He denied he wilfully made any false statements with the intent of inducing plaintiffs to issue said certificates. He admitted he then knew of the four malpractice suits which had previously been filed against him, as alleged, but denied generally the other allegations of the amended complaint. He admitted he was served on July 3, 1953, with notice of rescission and that plaintiffs tendered the premium paid but claims he returned it. By way of affirmative defense he alleged that on or about February 5, 1953, plaintiffs became aware of and had full knowledge of these several claims and/or lawsuits filed against him and that notwithstanding such knowledge on their part, they gave no notice of rescission of said certificates to defendant until July 3, 1953. It is contended that plaintiffs waived said

claimed breach and were estopped from claiming it because, after obtaining knowledge of it, plaintiffs continued to investigate certain claims of malpractice of defendant Calaway in reference to defendant Perez et al., for the purpose of effecting a settlement; that defendant was therefore lulled into a sense of security by their action and was prejudiced by it.

The court found generally that plaintiffs were underwriters authorized to engage in the insurance business at Lloyd's London; that Pacific was licensed in this state to carry on business as a surplus line broker and authorized to enter into and execute the certificates of insurance on behalf of plaintiffs, "subject to the rules and regulations of plaintiffs"; that defendant was a practicing physician and on December 13, 1950, signed the completed "proposal form and declaration for malpractice insurance," and submitted it to the agent of Pacific, requesting the issuance of a policy; that it is untrue that the soliciting agent was an agent of plaintiffs, and untrue that Pacific was the agent of plaintiffs except to the extent specifically authorized. It then found that defendant, at the time of the application, knew that four lawsuits had been filed against him alleging acts of malpractice and did not disclose them, and that if disclosed plaintiffs would not have issued the insurance certificates; that Pacific had no authority to issue said certificates had such information been disclosed, without having first submitted the proposal to plaintiffs, and that plaintiffs relied solely upon the warranties of defendant; that plaintiffs tendered the $169.28 premium paid on the policy to defendant, who refused it, and plaintiffs deposited said sum with the county clerk, subject to the order of the court; that there was a notice of rescission of the certificates of insurance given on July 3, 1953, and, due to the breach of warranty, no liability of plaintiffs attached to the risk and the certificates were, accordingly, void from their inception; that there was no unreasonable delay in giving the notice of rescission and that the affirmative defenses claimed by defendant were untrue. Judgment was entered accordingly.

■ The main complaint is that these findings are not supported by the evidence in this, that the finding as to the limitation of agency of Pacific had no evidentiary support and is an indefinite conclusion.

The original "proposal form" was attached to and made a part of the certificate of insurance issued. The vice president of Pacific testified that Lloyd's London is a nonadmitted

carrier of insurance in California and operates in conformity with the requirements imposed upon such insurers; that Pacific is a surplus broker in this state and the business placed with Lloyd's London is placed through a surplus broker's license. He testified that all of Pacific's dealings are with the London broker; that Pacific had authorization to accept specific types of insurance, such as malpractice, based upon certain requirements; that the acceptance of any such insurance during the period here in question was controlled by this agreement; that Pacific was not authorized to write such business but only authorized to place this business in nonadmitted companies; that the certificates issued by plaintiff were issued through Pacific; that the procedure was to submit a ''proposal form'' to the customer or ''producer'' who may be a licensed agent of this or any other company, and if properly filled out and signed the proposal is reviewed, and if in accordance with Pacific's authority from the London broker required to be obtained to effect that type of coverage, Pacific was authorized, under its master malpractice contract, and subject to its terms, to issue a certificate of insurance; that if the proposal indicates an unsatisfactory loss experience, the risk is submitted to the Underwriters for their specific approval and such approval is necessary before Pacific is authorized to issue the certificate; that Pacific had no discretion to issue such certificate if the proposal showed that there had been or was about to be a malpractice action filed against the applicant. However, this was qualified by the statement that if a suit had been filed against the applicant and ''nothing. had happened on the thing,'' and the statute of limitations had run on it, and his company ''knew that nothing came out of it . . . in other words, . . . the Underwriters did not pay anything on it,'' his company would not consider the loss record or claims history unsatisfactory, and would probably issue the certificate. He further stated that as to a ''producer,'' Pacific had no authority to delegate any binding authority to such producer. The witness further testified in some detail as to the *modus operandi* of the Underwriters at Lloyd's London, somewhat in accord with the historical background related in *People* v. *Caldwell,* 55 Cal.App.2d 238 [130 P.2d 495], footnote page 247. From this evidence we must conclude that it supports the court's findings as to the limitation of Pacific's agency.

Defendant claims that the terms of the policy and certificate give Pacific a greater authority because it recites that the

assured, in event of claim or suit, shall advise "Underwriters" immediately "through Pacific" managers and forward to the Underwriters' representative any summons served; that all notices and communications to the Underwriters and all processes required to be forwarded to it under the terms of the certificate shall be delivered to Pacific, "the Underwriters' representative," and delivery accordingly shall be conclusively deemed to constitute the receipt thereof by the Underwriters. This added authority would not necessarily or materially impeach the finding.

In defendant's closing brief his counsel states that this appeal is not based on any finding that Pacific had no authority to issue a policy of malpractice insurance wherein previous malpractice claims against doctors have been disclosed, but on the fact that the plaintiffs did not rescind promptly after having knowledge of any prior malpractice claims. We will therefore not further labor the point but will consider it under that claim.

It is contended that plaintiffs, through Pacific and its agent, learned of three of the four previous lawsuits against defendant on February 6, 1953; that accordingly plaintiffs did not rescind promptly, were guilty of laches in giving notice of rescission, waived their right to, and were estopped from rescinding, and that the findings should be corrected accordingly, citing section 1691 of the Civil Code; *Gedstad* v. *Ellichman*, 124 Cal.App.2d 831, 835 [269 P.2d 661]; and authorities cited therein to the effect that acting promptly is a condition of one's right to rescind, and a delay of more than one month in serving notice of rescission requires explanation, citing *J. Frank & Co.* v. *New Amsterdam Cas. Co.*, 175 Cal. 293, 295 [165 P. 927].

The facts giving rise to the contentions here raised are that Pacific received notice of the claim by defendants Perez et al. on December 9, 1952, respecting some contemplated action against defendant for alleged malpractice, and on January 30, 1953, notice of suit was received. An independent adjuster in Fresno was appointed to investigate the claim. When called as a witness he testified he called defendant on the telephone about the Perez claim and after relating the facts about it defendant said something in reference to other claims. Apparently the adjuster had defendant sign a statement dated January 5, 1953, about the Perez claim, in which he also stated:

"Prior to the hereinafter described occurrence a claim was made against me during 1950 or 1951 because of a broken leg suffered by the colored baby born by Caesarian Section. I do not remember the exact details, but my recollection is that the insurance company covering me for malpractice made a contribution of some $500.00, the company covering the hospital having paid the remainder of the settlement. On another occasion, about ten years ago, Ray Carter, a local attorney, filed a suit for $50,000.00 on a case involving a boy with a ruptured appendix. This case was tried and a verdict rendered in my favor." (This still leaves one lawsuit which defendant never did disclose.)

It appears that thereafter considerable investigation was conducted in reference to witnesses and the possible liability of the defendant on said claim. On April 10, 1953, the adjuster forwarded his report to Pacific and Pacific forwarded it to its adjuster in San Francisco who informed the Fresno adjuster that they were obliged to report the matter to Lloyd's Underwriters to be reviewed by Messrs. Mendes and Mount, in New York. This letter read in part: ". . . the record above indicates a breach of warranty, however, we are sure that no fraud was intended either by the insured or by . . . the agent in this case. In view of the amount of our exposure, however, we recommend that a declaratory judgment action be filed." On April 30, 1953, Pacific received advice from Lloyd's London informing Pacific it had received transmittal slip dated April 1, 1953, and adjuster's report advising that the claim had been referred to Mendes and Mount. On June 16th, Mendes and Mount wired the Fresno adjuster that "in view of possible misrepresentations make no commitment to assured or client Perez." On July 1st, 1953, after considerable correspondence and investigation, Mendes and Mount wired Pacific that Underwriters authorized rescission action and premium refund. Thereafter, on July 31, 1953, this action was filed. The point is that defendant claims plaintiffs were notified through their duly authorized agent, the adjuster, of at least three prior malpractice claims and/or suits by virtue of the letter or statement signed by defendant on February 5, 1953, and by the original proposal form, and therefore plaintiffs were, as a matter of law, charged with such knowledge as of that day; that accordingly they failed to thereafter promptly rescind, citing such authority as *Federal Life Ins. Co.* v. *Cary,* 20 Cal.App.2d 257, 259 [67 P.2d 129].

The court was justified in believing that the adjuster was employed for the limited purpose of obtaining information regarding the Perez claim. (*Wilson* v. *Maryland Cas. Co.,* 19 Cal.App.2d 463 [65 P.2d 903]; *Iverson* v. *Metropolitan Life Ins. Co.,* 151 Cal. 746 [91 P. 609, 13 L.R.A.N.S. 866].) It appears that the other statements made as to prior suits were only incidental to the investigation. The adjuster had no means of knowing what defendant stated in his former application or proposal, and this information did not actually reach plaintiffs' attention until April, and was acted upon shortly before this action was commenced. Regardless of the time of actual discovery by plaintiffs of the concealed facts, whether it was February 5, 1953, as claimed, or "during the month of April, 1953," as found, the main question is whether the time elapsing between the date of discovery and the time of rescission was unreasonable under the circumstances. As was said in *Fabian* v. *Alphonzo E. Bell Corp.,* 55 Cal.App.2d 413, 415 [130 P.2d 779]:

"The question of laches is one for the determination of the trial court and its conclusion thereon will not be set aside by an appellate court, if such conclusion finds substantial support in the evidence. . . .

"It is not possible to designate a definite period of time within which a party must give notice of rescission of a contract because of misrepresentation, fraud, etc., but the facts peculiar to each case are determinative thereof." (See also *Hunt* v. *L. M. Field, Inc.,* 202 Cal. 701, 705 [262 P. 730].)

Section 330 of the Insurance Code defines "concealment" as "Neglect to communicate that which a party knows, and ought to communicate . . ." And this is true whether the concealment is intentional or unintentional. (Ins. Code, § 331; *Telford* v. *New York Life Ins. Co.,* 9 Cal.2d 103 [69 P.2d 835]; *Mirich* v. *Underwriters at Lloyd's London,* 64 Cal.App.2d 522 [149 P.2d 19].) Under section 449 of the Insurance Code a breach of warranty without fraud merely exonerates an insurer from the time it occurs, or where the warranty is broken in its inception, prevents the policy from attaching to the risk. Section 650 of the Insurance Code provides that "Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract."

It does not appear that there is any inconsistency

between section 1691 of the Civil Code and section 650 of the Insurance Code. In *Federal Life Ins. Co.* v. *Cary,* 20 Cal. App.2d 257, 261 [67 P.2d 129], it was contended that the general statute of limitations (Code Civ. Proc., § 338, subd. 4) and the code sections relating to rescission (Civ. Code, § 1689, et seq.) do not apply because section 650 of the Insurance Code permits an insurer to rescind ''at any time previous to the commencement of an action on the contract.'' It was held that these sections should be read together and that the latter be interpreted as meaning that the insurer may rescind at any time within the statutory period providing no action has been commenced on the policy, and that section 650 is really a limitation on the right to rescind, rather than an extension of it.

█ It is true that an insurance company, like any other contracting party, may waive provisions placed in a policy solely for its own benefit and may, by its conduct, be estopped from asserting defenses which might otherwise be available. (*J. Frank & Co.* v. *New Amsterdam Cas. Co.,* 175 Cal. 293, 295 [165 P. 927].) █ The findings of the trial court that plaintiffs were not estopped from asserting the defense of concealment, that there was no waiver of the provisions of the policy, and no unreasonable delay in effecting the rescission are supported by the evidence. The question was a matter for the determination of the trial court and not one of law. (*Fabian* v. *Alphonzo E. Bell Corp.,* 55 Cal.App.2d 413, 415 [130 P.2d 779]; *Gedstad* v. *Ellichman,* 124 Cal.App.2d 831, 835 [269 P.2d 661].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.