AMERICAN MUTUAL LIABILITY IN-
SURANCE CO., a Corporation,
Appellant,

v.

Kathleen Ann GOFF, Charles T. Goff, Jr., and Bette Jo Goff, minors, by and through their Guardian Ad Litem, Charles T. Goff, and Charles T. Goff, Appellees.

No. 16375.

United States Court of Appeals
Ninth Circuit.
Aug. 25, 1960.

---

Robert L. Lamb, Lamb & Hoge, San Francisco, Cal., for appellant.

Hancock & Lundgren, Modesto, Cal., for appellees.

Before POPE, HAMLEY and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This is an appeal by the American Mutual Liability Insurance Company from a declaratory judgment imposing liability on it under a professional liability insurance policy for any judgment obtained against the named insured, Dr. E. Vernon Ashley, in a then pending malpractice action filed in California Superior Court by the heirs of Bette Jo Goff, deceased. Judgment was eventually entered in the state court against the said

insured in the amount of $75,932.00. The instant action was brought by the above heirs and the insured after appellant had withdrawn from Dr. Ashley's defense during the state trial and tendered notice of rescission of the policy.[1] Jurisdiction is conferred by diversity of citizenship and 28 U.S.C.A. § 2201.

The two main questions presented by this appeal are whether appellant is entitled to rescind its policy because of Dr. Ashley's purported misrepresentation or concealment of material facts in applying for the policy of insurance.[2]

The facts, so far as pertinent, reveal that Dr. Ashley practiced medicine in Hollywood, California as an associate of one Dr. A. E. Carter during the latter part of 1954. In November of that year, Mrs. Adelstein, a patient, telephoned one of the office nurses at the latter's home and expressed dissatisfaction with the treatment she had received from Dr. Ashley. Although this precise conversation is not clear from the record, the import of Mrs. Adelstein's grievance was that she had become addicted to narcotics because Dr. Ashley had prescribed excessive quantities for her; she threatened to sue.

The nurse informed the resident manager of the office of the telephone call, and the latter in turn relayed the information to Dr. Carter and one Ward Mikkelson, management consultant of the office. At the time Dr. Ashley was himself in a sanitarium in Glendale, California, undergoing treatment for narcotics addiction, and Mikkelson there informed him of the complaint. This visit was followed by a letter from Dr. Carter

---

1. Dr. Ashley made no appearance at the trial, nor was he represented in any way; the lower court gave no consideration to his portion of the prayer in the complaint requesting reimbursement of costs incurred by him in the defense of the Goff actions, so that matter is not before us.

2. In determining these questions, we are governed by California law. Calif.Civil Code § 1646; National Life & Accident Ins. Co. v. Gorey, 9 Cir., 1957, 249 F. 2d 388. California has by statute ex-

pressly recognized the right of an insurer to rescind on either of the grounds stated by appellant in the following sections of its Insurance Code:

331: "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."

359: "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."

in which he referred to the "impending suit for malpractice," but expressed the hope that "nothing will come of it and that it will soon blow over."

A criminal prosecution grew out of Dr. Ashley's treatment of Mrs. Adelstein, and on December 10, 1954, following a plea of guilty and conviction of violations of the California Health and Safety Code,[3] he was sentenced to pay a fine and serve a term in jail. The jail sentence, however, was suspended; Dr. Ashley was placed on probation for three years and lost his narcotics stamp, i. e., the right to prescribe narcotics.

It was after these events that Dr. Ashley applied for and received his professional liability insurance. He obtained a temporary binder on January 9, 1955, and submitted a formal application upon a written form supplied by the appellant on January 19, 1955; the policy became effective, retroactively, on January 9th. In the application, Dr. Ashley made the following representation:

"15. No claims for professional errors or mistakes have ever been made against me nor has any insurer cancelled any professional liability insurance issued to me, or declined to issue such insurance except as follows: *None.*"

■ The first question raised by the appellant is whether the above answer is a "misrepresentation" which would justify appellant's rescission. This defense stems from the general principle that an insured, at the time he seeks to obtain insurance, is obliged to disclose fully and fairly to the insurer all those matters of which he is aware affecting the risk for which the policy is issued and which would normally tend to

influence the insurer in deciding whether to enter into the contract. Telford v. N. Y. Life Ins. Co., 1937, 9 Cal.2d 103, 69 P.2d 835. In order to establish misrepresentation, the burden was on the appellant to show that the above answer to Question 15 was false and material to the risk of the policy. Mayfield v. Fidelity Casualty Co., 1936, 16 Cal.App.2d 611, 61 P.2d 83; Employers' Liability Assur. Corp. v. Ind. Acc. Comm., 1918, 177 Cal. 771, 171 P. 935. The lower court held that Question 15 was ambiguous and, construing it in favor of the insured, ruled that it did not encompass the type of grievance presented by Mrs. Adelstein and therefore appellant had not met its burden of proof on this issue.

■ We agree. Question 15 is far from clear: it does not delineate or explain the extent of the "claims for professional errors" which are required to be disclosed in the application; the uncertainty is whether the "claims" referred to include all grievances lodged with the applicant or are limited to formal demands for compensation. See, for example, Mirich v. Underwriters at Lloyd's London, 1944, 64 Cal.App.2d 522, 149 P.2d 19; Cole v. Calaway, 1956, 140 Cal. App.2d 340, 295 P.2d 84.

It was therefore proper for the lower court to construe this language in the more restricted or narrow sense in favor of the insured and rightly hold that Mrs. Adelstein's grievance was not the type of formal demand contemplated by Question 15. Pendell v. Westland Life Ins. Co., 1950, 95 Cal.App.2d 766, 214 P.2d 392. The "claim" was received by a nurse at home and relayed through the resident manager to Dr. Carter and Mikkelson, and the latter advised the insured only of a "possible claim by Mrs.

---

3. The sections under which Dr. Ashley was convicted are as follows:

11165: "No person shall issue a prescription that is false or fictitious in any respect."

11225: "Every person who issues a prescription, or administers or dispenses a narcotic shall make a record that, as to the transaction, shows all of the following:

"(a) The name and address of the patient.

"(b) The date.

"(c) The character and quantity of narcotics involved.

"(d) The pathology and purpose for which the prescription is issued, or the narcotic administered, prescribed, or dispensed."

Adelstein." Dr. Carter, in his letter to Dr. Ashley, had expressed hope that the matter "would soon blow over." This was the extent of the "claim" at the time Dr. Ashley submitted his application, and at that time it was little more than an ordinary grievance which must not be unfamiliar to members of the medical profession.[4] Under these circumstances, we cannot say that the lower court erred in finding that appellant had failed to establish its defense of misrepresentation.

The second question raised by appellant is whether the failure to disclose Dr. Ashley's conviction and loss of narcotics stamp constituted a "concealment" under the California Insurance Code.

Section 330 of that Code defines concealment as the "[n]eglect to communicate that which a party knows, and ought to communicate * * *," and further sections permit the other party to rescind whether the concealment is intentional or not.[5] Cohen v. Penn Mutual Life Ins. Co., 1957, 48 Cal.2d 720, 312 P.2d 241; Mirich v. Underwriters at Lloyd's London, supra. Section 332 provides:

"Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract * * *"

Dr. Ashley was not called as a witness, and there is nothing in the record before us tending to show that he believed his criminal conviction or loss of narcotics stamp was germane to the issuance of the policy or that he gave any thought to these matters in that connection.

■ However, the statute also imposes the additional duty upon the applicant to communicate all facts to the insurer "which are" material without regard to his own belief. Thus, the basic issue presented is whether the undisclosed facts are material as a matter of law; the burden of proving such materiality rested upon appellant. Olson v. Standard Marine Ins. Co., 1952, 109 Cal.App.2d 130, 240 P.2d 379.

Materiality is to be determined " * * not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due * * *." Calif.Ins.Code § 334. We have recently construed this section and held as follows:

"This test looks only to the evidence concerning the attitude or practice of the insurance company involved in the suit. The courts of California have determined that under § 334 of the West's Ann.California Insurance Code they are required to adopt this * * * test in determining the materiality of concealed or misrepresented facts." Merchants Fire Assur. Corp. v. Lattimore, 9 Cir., 1959, 263 F.2d 232, 241.

■ Applying this standard to the present case, we note a complete absence in the record of any evidence showing that appellant by its "attitude and practice" considered Dr. Ashley's conviction or loss of narcotics stamp material.[6]

---

4. The record reveals that Mrs. Adelstein eventually filed a complaint against Dr. Ashley, but this occurred after his application was submitted and the insurance issued; this could have no effect on the fact that no "claim" existed at the time the application was tendered. See Chase v. Sunset Mutual Life Ass'n, 1929, 101 Cal.App. 625, 281 P. 1054; Brubaker v. Beneficial Standard Life Ins. Co., 1955, 130 Cal.App.2d 340, 278 P.2d 966.

5. See footnote 2, supra.

6. Appellant seems to suggest that Dr. Ashley's failure to disclose Mrs. Adelstein's grievance was also a concealment as well as a misrepresentation. There was testimony by Thomas Hadfield, a vice-president of appellant, that a patient's "claim" involving misuse of narcotics would be material and preclude issuance of the policy; but this evidence is subject to the same infirmity as the answer to Question 15 in the application, for at the time the application was submitted, little more than a rather vague grievance had been expressed, upon which no action had been taken by the patient; no "claim" in the sense of a formal demand for compensation had been asserted and thus no material fact was concealed.

Nor was any inquiry directed to these matters in appellant's own application; the failure to inquire into such facts in the first instance has been held to demonstrate a lack of interest in them, negativing their materiality. Farmers Auto Inter-Insurance Exchange v. Calkins, 1940, 39 Cal.App.2d 390, 103 P.2d 230; Olson v. Standard Marine Ins. Co., supra. This lack of inquiry, coupled with appellant's failure to meet its burden by otherwise establishing materiality, compels the conclusion that the lower court did not err in finding that the defense of concealment was not sustained.

Lastly, appellant urges that in any event the contract of insurance was rescinded prior to commencement of any action on the policy. This contention is based upon the fact that appellant served its notice of rescission in July, 1956, and tendered a check for the amount of the returned premium, which Dr. Ashley promptly endorsed and cashed. Appellant concludes from this that "[r]escission was timely and effectual as to Dr. Ashley. Plaintiffs Goff rights under the policy were no better than those of Dr. Ashley * * *. Rescission was therefore equally timely and effectual as to plaintiffs Goff."

■ This contention apparently suggests that there was a mutual rescission of the policy between appellant and Dr. Ashley, or at least that a unilateral rescission was effected without objection by the insured. Yet appellant has not shown that the policy was invalid or that it had a right to rescind under the California Insurance Code. Further, the cause of action against the insured accrued in October, 1955, and suit was brought by the Goffs against Dr. Ashley in December of the same year. Since the policy was valid and still in effect at that time, neither the insured nor the insurer could deprive the Goffs of the vested rights which they had already perfected. Under these circumstances, "[t]he loss or liability insured against in the insurance policy was for the benefit of these plaintiffs, and when their cause of action accrued, no subsequent act of the insured could deprive them of it." Hooker v. American Ins. Co., 1936, 12 Cal.App.2d 116, 123, 54 P.2d 1128, 1131; see also, Georgia Casualty Co. v. Boyd, 9 Cir., 1929, 34 F.2d 116.

Affirmed.