[Civ. No. 29959. Second Dist., Div. Two. Sept. 26, 1966.]

CIVIL SERVICE EMPLOYEES INSURANCE COMPANY, Plaintiff and Respondent, v. HAROLD O. BLAKE et al., Defendants and Appellants.

Niebrugge & Brookings, Jackson & Niebrugge and Frank G. Brookings for Defendants and Appellants.

Spray, Gould & Bowers for Plaintiff and Respondent.

FLEMING, J.—Blake and Carter appeal from a judgment in favor of the insurance company declaring Blake's automobile insurance policy void from its inception because of fraudulent statements in his application for the policy.

In 1962 Blake obtained automobile insurance by submitting an application in which he answered two questions falsely. The first question was "Have you or *any other driver* of this car: (A) Any chronic ailment? (espec. Heart disease, Epilepsy, Fainting spells, etc.)" Blake answered "Yes. In 1950 but none after." In fact, Blake had had epileptic blackouts continuously from 1949 to at least 1960. In 1949 Blake had had a blackout while driving and caused an accident in which three persons had been killed. The second question was "Have you or *any other driver* of this car: (C) Ever had your driver's license revoked, suspended, or restricted?" Blake answered "No" although in fact his license had been surrendered in 1950 and revoked in 1959 and his other applications for a license had been denied. The evidence showed that Blake intentionally answered these two questions falsely, that Tucker, the agent who took Blake's application, had no knowledge of his physical condition or his driving history, that the insurance company would not have issued the policy had the questions in the application been answered truthfully.

During the period covered by the policy Blake had an automobile accident involving Carter, and Carter sued Blake for personal injuries. Thereafter the company discovered Blake's true health history and rescinded its policy. Subsequent to the notice of rescission, Blake demanded that the insurance company assume the defense of his personal injury action; and the company then filed this suit for declaratory relief against Blake and Carter.

Insurance Code, sections 359 and 650, provide "If a representation is false in a material point . . . the injured

party is entitled to rescind the contract from the time the representation becomes false," and "Whenever a right to rescind a contract of insurance is given to the insurer . . . such right may be exercised at any time previous to the commencement of an action on the contract." Blake and Carter concede there was substantial evidence to support the finding of false representation. This being conceded, "The law seems clear that where the insured has secured a policy of automobile liability insurance through fraud, breach of warranty, or material misrepresentation, the insurer can rescind the policy as of its inception, notwithstanding the existence of any rights in third parties who were injured by the acts of the insured which occurred before the rescission." (*Allstate Ins. Co.* v. *McCurry*, 224 Cal.App.2d 271, 274 [36 Cal.Rptr. 731].)

 However, Blake and Carter contend the insurance company was not, as a matter of law, entitled to rely on the false representations in Blake's application for insurance in 1962, because in 1957 it had issued a policy of insurance to Blake through an agent of the company named Reinhart, and at that time Reinhart had known that Blake was subject to blackouts and was not licensed to drive. Appellants argue that even though Reinhart had no knowledge of Blake's application for a policy in 1962 and nothing to do with its issuance, nevertheless Reinhart's knowledge of Blake's condition in 1957 was imputed to the company in 1962; that, therefore, the company in 1962 possessed constructive knowledge of Blake's physical condition and driving history and could not claim to have relied on his false representations in the 1962 application.

The 1957 policy application is in evidence. In his application Blake specifically declared that a woman companion, Mrs. Ballinger, would do all the driving and that Blake himself would not drive the car. The application stated "Mr. Blake doesn't drive a car. Mrs. Ballinger a close friend drives his car for him." Over Blake's signature the application listed Mrs. Ballinger as the sole driver of the car, who would do "100%" of the driving. Questions concerning the health and driving record of all drivers of the car were answered entirely in terms of Mrs. Ballinger's health and not of Blake's. The 1957 policy remained in effect until 1960, when on the death of Mrs. Ballinger it was cancelled at Blake's request.

Blake and Carter argue the general rule that a principal is charged with knowledge of all material facts known to its agent. (Civ. Code, § 2332.) They contend that Reinhart's uncommunicated knowledge in 1957 of Blake's health

and driving record was imputed to the company in 1962 when a new application for insurance was submitted by Blake through a different agent; that therefore, the company could not have relied on the false representations in the 1962 application, because knowledge of their falsity was legally imputed to the company.

The trial court found "That because Reinhart and plaintiff insurance company knew that said 1957 policy was to cover [the woman driver] and that Blake was not going to drive said automobile, none of Reinhart's prior knowledge regarding Blake's health and prior accident was in fact related by him to [the company]. It is further true that any knowledge which said Thomas A. Reinhart might have had in connection with defendant Harold O. Blake's physical condition as of October 16, 1957, was not imputed to plaintiff company in connection with the written application made by said defendant for insurance dated April 20, 1962, which said written application was applying for insurance to cover defendant Harold O. Blake as driver.''

We agree with this finding of the trial court for two reasons:

First, Reinhart was under no obligation in 1957 to report Blake's physical condition to the insurance company. The 1957 policy was to cover the driving of Blake's car by Mrs. Ballinger, and the terms of the application did not purport to cover driving by Blake at all. Consequently, Blake's physical condition—whether splendid or decrepit or in between—had no more relevance to his 1957 application than would that of a child of tender years who owned an automobile or that of a nondriving partner in a firm which operated a truck. Since Blake was not a driver of the vehicle, information about his health and driving status was not called for by the application, was not relevant or material to the risk, and consequently Reinhart had no occasion to pass on to the company his knowledge of Blake's physical condition and driving history. Nor was Reinhart negligent in 1962 in failing to communicate his knowledge to his principal, for Reinhart never learned that Blake had applied for insurance in 1962 and listed himself as sole driver. Accordingly, the insurance company was not chargeable with constructive knowledge through Reinhart of the falsity of the representations made by Blake in his 1962 application ██ "[A] principal is not affected by the knowledge of an agent until it is communicated to him or until the one having the knowledge has committed a fault either in

transacting something for the principal or in failing to communicate it to others who are to act upon it.'' (*Kelley* v. *British Coml. Ins. Co.*, 221 Cal.App.2d 554, 561 [34 Cal.Rptr. 564].)

Second, even were we to assume, contrary to the facts of this case, that Blake and Reinhart had collaborated in 1957 to conceal Blake's physical condition by providing false information in his application for a policy and that Reinhart had been derelict in his duty to the company, we do not think the effect of such collusion would carry over to a different application in a different year with a different agent. Knowledge imputed to the company as a result of the 1957 application would normally be limited to the 1957 policy and renewals and extensions of that policy. A successful fraud in 1957 would not give Blake a vested right to perpetrate a new fraud in 1962 through a different set of false representations. And in any event an agent's failure in 1957 to communicate facts known to him at that time could not impute knowledge to the company of events which occurred after 1957 and up to 1962, for example, the revocation of Blake's driving license in 1959. We think the trial court was correct, both as a matter of fact and as a matter of law, in declining to impute knowledge to the company in 1962 of Blake's physical condition by reason of his prior application in 1957.

Appellants' other major contention is that the company did not rescind its policy with sufficient promptness after it had been put on notice that Blake's application contained false representations. The policy became effective April 20, 1962. A month later the company requested a driving report from the Department of Motor Vehicles, and on May 28 the department reported that Blake had had an accident in 1949, his license had been revoked in 1959, and his license had been reinstated in 1962. Since the report contradicted Blake's declaration that his license had never been revoked and since the authority cited for the revocation (Veh. Code, § 13953, formerly § 315b) implied revocation for health reasons, the company ordered a report from an investigating agency of Blake's driving and drinking habits and the condition of his health. This report, received June 14, specifically stated that Blake was in good health, and had no illnesses nor physical, mental, or health impairments; but it described Blake's driving habits and record as poor, and said that his license had been suspended in 1959 because of his inability to drive safely. On the basis of this information the company's San Francisco office on July

10 requested its agent to obtain a voluntary surrender of the policy within 10 days, and told him if he could not do so it would issue a direct notice of cancellation. On July 13 the Los Angeles manager asked the company in San Francisco its reasons for the proposed cancellation. An answer, dated July 26, sending him a copy of the investigative report, was prepared but not mailed. Meanwhile Blake's accident occurred on July 19, and Carter filed suit on July 25. The company's initial report from its adjuster on the accident indicated it had been caused by a blackout. The company determined to investigate the medical aspects of the policy. In August, pursuant to written authorization from Blake, the company secured access to Blake's medical records and thereby learned for the first time of Blake's epileptic blackout history. About August 24 it determined to rescind the policy entirely, and on September 6 it gave written notice of rescission for misrepresentation of chronic ailments.

This record reflects the normal processing through channels of a routine business transaction under modern conditions. Granted that in such processing there is much bureaucratic paper work which slows down the speed with which the business is accomplished, still the bureaucratic process provides a check against hasty or ill-conceived action based on speculation about events prior to the time the actual facts are in hand. Barefaced fraud is sufficiently rare in our society that in most instances we can assume an honest explanation of paper discrepancies. Precipitous haste in an investigation which may result in action prejudicial to an insured is generally thought undesirable, and we require an insurer to act with care so that an insured does not needlessly suffer the stigma attached to summary cancellation or rescission. In performing a task of some delicacy the insurer has considerably fewer weapons at hand than does an arm of the executive, legislative, or judicial branch of the government. It has no power to take testimony or compel statements under oath, and in the absence of an insured's written consent it has no direct access to the files which would be most helpful in its investigation, for example, those of the Department of Motor Vehicles, or those containing hospital and medical records of an insured. The combination of the need for care with the necessity of getting most information at secondhand tends to turn an insurance investigation into an elaborate mosaic of time-consuming routine.

When we consider the present case in the light of these factors, we find that on May 28 the company received an inti-

mation that Blake had health problems, but this clue was then contradicted by the results of its further investigation on June 14, which specifically reported good health and suggested nothing more serious than poor driving habits. In the light of this further information we think the company was justified in proceeding with cancellation by routine and ordered business practices rather than by way of a crash program. We find no undue delay in the company's action in following up available leads on the subject of false representations, nor any undue delay in the company's notice of rescission once it had discovered false representations about health. (Ins. Code, § 650; *Allstate Ins. Co.* v. *McCurry*, 224 Cal.App.2d 271 [36 Cal.Rptr. 731]; *Cole* v. *Calaway*, 140 Cal.App.2d 340, 345, 347 [295 P.2d 84].)

Appellants urge that the public policy favoring insurance coverage for all drivers is not achieved when a driver is left without coverage on the rescission of his policy for fraud. This is an argument for the Legislature. To date, California still permits uninsured motorists to use its highways, but has adopted a comprehensive system of uninsured motorist coverage for all policy holders in order to provide some protection against drivers without insurance. If Carter obtains a judgment and is unable to collect from Blake, presumably he can recover from his own insurer under his uninsured motorist coverage. At present, this is as far as California has gone in the direction of compulsory automobile insurance, and further moves in that direction must await action of the Legislature.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 23, 1966.