Robert JAUNICH II, et al., Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Counterclaimant,

v.

Robert JAUNICH II, et al., Counter-Defendants.

No. C–85–0055 EFL.

United States District Court, N.D. California.

Feb. 25, 1986.
On Reconsideration May 27, 1986.

Allen Ruby, Morgan, Ruby, Teter, Schofield, Franich & Fredkin, San Jose, Cal., for plaintiffs.

Dale E. Fredericks and Darryl M. Woo, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendant.

## PARTIAL SUMMARY JUDGMENT

LYNCH, District Judge.

### I. Introduction

Defendant National Union Fire ·Insurance Company of Pittsburgh, Pa. ("National Union") has filed a motion for summary judgment with respect to the fourth cause of action in National Union's counterclaim against the plaintiffs. National Union's fourth claim seeks a judicial declaration that National Union was entitled to rescind the directors and officers' liability policy it issued to the Osborne Computer Corporation ("Osborne").

### II. Applicable Law

The California Insurance Code provides that "[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance." California Ins. Code § 331 (West 1972). The code defines concealment as the "[n]eglect to communicate that which a party knows, and ought to communicate...." Id. § 330. Thus, concealment of information known by an insured that the insured is required to communicate to its insurer is grounds for rescission.

Section 332 describes what information a party to an insurance contract must disclose:

Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining. Id. § 332.

The obligation of an insured to disclose, as described in section 332, is however modified by section 333, which states that a party to an insurance contract need not communicate the following matters unless requested to do so by the other party:

1. Those which the other knows.

2. Those which, in the exercise of ordinary care, the other ought to know, and of which the party has no reason to suppose him ignorant.

3. ·Those of which the other waives communication.

4. Those which prove or tend to prove the existence of a risk excluded by a warranty, and which are not otherwise material.

5. Those which relate to a risk excepted from insurance, and which are not otherwise material.

Id. § 333.

Moreover, notwithstanding the obligation to disclose as described in section 332 and modified by section 333, an insurer can waive his right to receive certain information if it "neglect[s] to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated." Id. § 336.

### III. Discussion

In light of the law outlined above, this Court may grant National Union's motion only if it can find the following as a matter of law:

(1) that Osborne neglected to communicate information known to it to National Union;

(2) that said information was material and that Osborne had an obligation to disclose it; and

(3) that National Union did not waive its right to receive the information.

The Court holds as a matter of law that the plaintiffs neglected to communicate information known to them prior to the issuance of the National Union policy and

that, absent any waiver by National Union, plaintiffs had an obligation to disclose the information withheld. The Court also finds that a genuine issue of fact exists regarding whether National Union waived its right to receive the information that was concealed. Therefore, a trial on the limited issue of waiver is necessary.

After reviewing the papers submitted, the Court finds that there is no genuine issue of fact that the following information was known by Osborne prior to issuance of the National Union policy but was nevertheless not communicated to National Union:

(1) Osborne's financial situation was far worse than had been previously represented to National Union, making its earlier representations grossly misleading;[1]

(2) Osborne needed a large amount of additional capital (estimated at as much as 10 million dollars) prior to the end of May 1983 to remain in business;

(3) Osborne's trade creditors were only willing to deal with Osborne on a cash basis;

(4) Osborne's principal lender, Security Pacific Bank, would not extend additional credit to Osborne as of May 2, 1983; and

(5) there existed a number of circumstances that could lead to litigation involving Osborne that had not been disclosed to National Union.

■ There can be no question that the information withheld was material and that Osborne had a duty to disclose it. Other courts and commentators have recognized that the financial health of a company as well as the existence of circumstances that can lead to litigation are material to an

insurer's decision to issue a directors and officers' liability policy. *See Shapiro v. American Home Assurance Co.*, 584 F.Supp. 1245, 1249 (D.Mass.1984). Such information is particularly material when the information has been specifically requested as part of the insurance application, *Thompson v. Occidental Ins. Co.*, 9 Cal.3d 904, 916, 109 Cal.Rptr. 473, 513 P.2d 353 (1973), which was the case with respect to most of the information at issue here. Furthermore, the undisclosed information was only available to the company or parties closely connected with the company; consequently, National Union had no reasonable means of obtaining the information other than from Osborne. Therefore, the Court holds that Osborne failed to disclose material information which it had a duty to communicate to National Union.

The Court finds, however, that an issue of fact exists concerning whether National Union waived its right to receive the information withheld. After having filed its original insurance application, Osborne amended the application by disclosing to National Union that Osborne's fiscal year had changed, interim financial statements were not available, a public offering had been canceled, the annual shareholders meeting had been postponed, and the previous year's audit was in error and a reaudit was in process. In response to these disclosures, National Union apparently did very little. The evidence submitted indicates that National Union's only inquiry involved a telephonic conversation with Osborne's insurance broker, Barbara Ritz. Ritz's deposition testimony indicates that the extent of National Union's inquiry was to ask her the possible magnitude of the

---

1. For example, Osborne's original application to National Union indicated that Osborne's losses for the fiscal year ending November 27, 1982 would be $1,021,000 and that its net income for the subsequent two months ending on January 29, 1983 would be $321,747. However, on May 25, 1983, the same day the additional disclosures were made to National Union, Osborne also disclosed financial information to its board members showing an $11,083,000 loss for its fiscal year which it had changed so as to end on February 26, 1983.

Plaintiffs contend that they did not conceal any financial information because there were no interim financial statements available prior to issuance of the policy and, consequently, any financial figures that were available were nothing more than opinions or estimates. Nevertheless, plaintiffs have submitted no evidence controverting National Union's submissions indicating that Osborne clearly knew that, whatever the final figures turned out to be, Osborne's financial condition was far worse than previously disclosed to National Union.

errors in Osborne's previous financial disclosures. Ritz further testified that her only answer was that someone in the company said that the deviation could be "as much as 12 percent." National Union submitted no evidence that any subsequent efforts were made to obtain additional clarifications of the disclosures.

On the evidence presented, the Court cannot hold as a matter of law that National Union's failure to make more extensive efforts to obtain further information from Osborne did not constitute a waiver of the right to receive the undisclosed information. The disclosures made by Osborne clearly implied that the representations in its original application were inaccurate. Nevertheless, National Union made very little effort to obtain further elaboration of the disclosures. The Court thus believes that an issue of fact exists concerning whether National Union's indifference constituted waiver.

In summary, the Court grants partial summary judgment in favor of National Union by finding that Osborne failed to disclose material facts which, absent waiver, it had an obligation to disclose. However, the Court does not grant summary judgment on the entire question of National Union's right to rescind because a triable issue of fact exists concerning the possibility of a waiver on the part of National Union.[2]

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") has filed a motion for reconsideration of this Court's ruling on National Union's earlier motion for summary judgment with respect to the fourth cause of action in National Union's counterclaim against the plaintiffs. National Union's fourth claim seeks a judicial declaration that National Union was entitled to rescind the directors and officers liability policy it

issued to the Osborne Computer Corporation ("Osborne").

The Court's ruling on National Union's earlier motion granted National Union partial summary judgment. The Court held that Osborne had withheld the following material information from National Union:

(1) Osborne's financial situation was far worse than had been previously represented to National Union, making its earlier representations grossly misleading;

(2) Osborne needed a large amount of additional capital (estimated at as much as 10 million dollars) prior to the end of May 1983 to remain in business;

(3) Osborne's trade creditors were only willing to deal with Osborne on a cash basis;

(4) Osborne's principal lender, Security Pacific Bank, would not extend additional credit to Osborne as of May 2, 1983; and

(5) there existed a number of circumstances that could lead to litigation involving Osborne that had not been disclosed to National Union.

The Court stated that this failure to disclose entitled National Union to rescind its policy unless National Union waived its right to receive the information that was withheld. The Court then found that a question of fact existed on the issue of whether National Union's failure to investigate more fully those disclosures that were made by Osborne constituted a waiver of the right to receive the information that was withheld.

■ An insurer waives its right to receive withheld information only if it fails to make inquiries as to such information when the information is "distinctly implied" in other facts that are disclosed. California Ins. Code § 336 (West 1972). In its original consideration of the waiver issue, the Court determined that the following information disclosed by Osborne in an amendment to its original application for insurance ("the amendment") may have suggest-

---

2. Plaintiffs also claim that National Union did not effect its rescission in a timely fashion.

This claim appears to be closely related to the waiver issue and will be tried together with it.

ed that Osborne's financial condition was deteriorating and thereby distinctly implied the withheld information relating to Osborne's financial woes:

(1) Osborne's fiscal year had changed;

(2) the previous year's audit was in error and a reaudit was in process;

(3) interim financial statements were not available;

(4) a public offering had been canceled; and

(5) the annual shareholders meeting had been postponed.

The Court found that the only efforts by National Union to investigate the above disclosures involved a telephonic conversation with Osborne's insurance broker, Barbara Ritz. The evidence indicated that the extent of the inquiry was to ask Ritz the possible magnitude of the errors in Osborne's previous financial disclosures. Ritz's deposition shows that her only answer was that someone in the company said that the deviation could be "as much as 12 percent."

Given the Court's conclusion that the disclosures by Osborne may have distinctly implied Osborne's financial woes, the Court held as follows:

On the evidence presented, the Court cannot hold as a matter of law that National Union's failure to make more extensive efforts to obtain further information from Osborne did not constitute a waiver of the right to receive the undisclosed information. The disclosures made by Osborne clearly implied that the representations in its original application were inaccurate. Nevertheless, National Union made very little effort to obtain further elaboration of the disclosures. The Court thus believes that an issue of fact exists concerning whether National Union's indifference constituted waiver.

Having reconsidered the papers previously filed in the original motion for summary judgment and those papers filed in the instant motion for reconsideration, the Court has determined that National Union is entitled to summary judgment.

In its original consideration of the waiver issue, the Court did not focus on whether the withheld information relating to Osborne's potential involvement in a number of lawsuits was distinctly implied in any of the information that Osborne communicated to National Union. Rather, the Court concentrated on the fact that much of the information disclosed to National Union suggested that Osborne was suffering the financial problems which it in fact was experiencing. Having now specifically considered the question of whether the information relating to potential lawsuits was distinctly implied in any of the disclosed information, the Court finds that the information was not. Therefore, there was no waiver by National Union of the right to receive the information and, consequently, National Union was entitled to rescind the policy.

■ In its prior order, the Court's finding that Osborne had withheld information concerning potential litigation was based primarily on a document represented as being a letter from Jerrold F. Petruzelli, Secretary and General Counsel for Osborne, to Mark Pickup of Arthur Young & Company. The Petruzelli letter was dated May 20, 1983, five days before the amendment was filed. In the letter, Petruzelli describes a number of potential law suits against Osborne. The potential suits described in the letter include possible wrongful termination suits by former employees, suits based on amounts owed various trade creditors and suits arising from inaccurate financial disclosures made to investors in connection with a warrant financing, individuals purchasing stock from directors and other affiliates of Osborne, recently hired senior management in connection with their being hired, and certain creditor banks. Of the potential lawsuits described in the letter, only those relating to the disclosures made to creditor banks and in connection with the warrant transaction were disclosed to National Union. Many of the other undisclosed potential suits have ripened into litigation and are in fact relat-

ed to the very suits for which the plaintiffs now seek coverage under the policy.

The materiality of the undisclosed potential suits is obvious. As stated above, many of them ripened into the lawsuits which plaintiffs now seek coverage. Moreover, National Union's insurance application specifically asked: "Does any Director or Officer have knowledge or information of any act, error, or omission which might give rise to a claim under the proposed policy?" Given the nature of the information withheld and the question posed to Osborne, the Court is still convinced that the information undisputedly withheld was material. *Cf. Shapiro v. American Home Assurance Co.*, 584 F.Supp. 1245, 1249 (D.Mass.1984) (prior claims and litigation involving directors and officers or the company are material to an insurer's decision on whether to issue a directors and officers liability policy); *Thompson v. Occidental Ins. Co.*, 9 Cal.3d 904, 916, 109 Cal.Rptr. 473, 513 P.2d 353 (1973) (fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law).

■ Unlike the financial information withheld, nothing disclosed to National Union could have "distinctly implied" the existence of the undisclosed acts, errors or omissions that could create claims under the policy. The only information given National Union regarding potential claims involved the disclosures made by Osborne to creditor banks and to the individuals involved in the warrant transaction. Based on this information, National Union excluded claims relating to the warrant transaction from coverage under the policy. The Court finds that these disclosures did not distinctly imply the existence of the other undisclosed acts, errors or omissions which also had the potential for creating claims under the policy.[1] Although many of the undisclosed potential claims also involved inadequate or false disclosures to third parties, their existence was never suggested in the information given National Union. Indeed, if anything, the forthright disclosure of certain of the potential claims suggested that no other similar potential claims existed. *Cf. Cohen v. Penn Mut. Life Ins. Co.*, 48 Cal.2d 720, 728, 312 P.2d 241 (1957) (medical information disclosed that was inconsistent with information withheld could not be said to have distinctly implied the existence of the withheld information).

As stated earlier, the Court relied primarily on the Petruzelli letter in finding that material information regarding acts, errors, or omissions that could lead to claims under the policy had been withheld. In the previous motion, no objection to the letter was made by the plaintiffs. Indeed, no affidavits were submitted by plaintiffs refuting the obvious fact that, given the date of the letter, some of Osborne's officers and directors knew about the undisclosed potential claims when the amendment was submitted to National Union.

After previously making no objection, the plaintiffs now attempt to undermine the letter's significance. Plaintiffs have submitted an affidavit signed by Mr. Petruzelli under penalty of perjury in which Petruzelli states that the letter submitted to the Court was only a draft and that the letter, although dated May 20, 1983, was actually prepared in June of 1983. Petruzelli explains that the reason the letter was dated May 20, 1983 was so it would coincide with the audit work being performed by Arthur Young & Co. Finally, Petrucelli

---

1. Relying on *Barrera v. State Farm Mut. Automobile Ins. Co. v. Superior Court*, 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969), plaintiffs apparently contend that National Union waived its right to rescind because it owed the plaintiffs a duty to discover the undisclosed claims even though their existence was not distinctly implied in any of the information given National Union. The duty to investigate insurability described in *Barrera* has very limited applicability and certainly would not apply to this case. One California court has stated that "a careful reading of *Barrera* and later kindred decisions compels the conclusion that the duty defined in *Barrera* must in any event be limited to automobile liability insurers who deny coverage for reasons arising out of their own negligence." *Fireman's Fund Ins. Co. v. Superior Court*, 75 Cal.App.3d 627, 633, 142 Cal.Rptr. 249 (1977).

states that to his knowledge no director or officer knew of the undisclosed potential claims "when the addendum [the amendment] was prepared," but he does not state what information was known by the directors and officers on the day the amendment was actually submitted.[2]

Despite plaintiffs' belated attempt to raise an issue of fact, the Court reaffirms its finding that the undisclosed acts, errors or omissions that could lead to claims under the policy were known of by some of Osborne's officers and directors when the amendment was filed with National Union. Independent of the Petruzelli letter, there is an abundance of unrefuted evidence indicating that some of the officers and directors of Osborne knew about the undisclosed circumstances that could lead to litigation and create claims under the policy. The deposition testimony of Donald L. Waite, Osborne's Chief Financial Officer, and Robert Jaunich II, Osborne's President and Chief Executive Officer, indicates that the undisclosed acts, errors or omissions were discussed by at least some of Osborne's officers and directors prior to May 25, 1983. Moreover, a letter discussing the undisclosed information was written by Tom Unterman, outside counsel for Os-

borne, to Mark Pickup of Arthur Young & Company on or about May 24, 1983. Thus, there is no genuine issue of fact regarding whether some of Osborne's officers and directors knew about the withheld information relating to potential claims under the policy.

Plaintiffs' final argument against summary judgment is that the rescission was ineffective because it was not effected in a timely fashion. In the Court's opinion on the waiver issue considered in the previous motion, it did not reach the question of whether delay precluded National Union from rescinding the policy. The Court found that the issue of unreasonable delay could be best resolved together with the waiver issue left open in that order. The Court now finds that any delay by National Union did not preclude rescission. First, the facts indicate that National Union rescinded the policy only approximately three months after having received all the information it requested of Osborne relating to whether or not National Union had a right to rescind. *See Civil Service Employees Ins. Co. v. Blake,* 245 Cal.App.2d 196, 200–02, 53 Cal.Rptr. 701 (1966) (insurer entitled to a reasonable time period to investigate

2. Admitting that such a letter written on May 20, 1983 would provide "strong evidence of Osborne's knowledge of claims on the date the National Union policy was bound," the plaintiffs offer Petruzelli's affidavit as a means of refuting the obvious fact that a letter containing the information in the Petruzelli letter dated May 20, 1983 would conclusively show knowledge on the part of some of Osborne's officers and directors of the withheld claims information. Conceding that the Petruzelli affidavit does raise an issue of fact regarding when the letter was written, the Court is however troubled by plaintiffs' belated submission of the affidavit. First, the plaintiffs have given no explanation for why the affidavit was not submitted in the earlier motion when perhaps the importance of the Petruzelli letter may not have been fully appreciated. Second, the Court is aware of information which seriously calls into question the truthfulness of the affidavit. Petruzelli states that the letter was prepared in June even though it is dated May 20, 1983. National Union has submitted a copy of the letter which apparently was in the possession of Arthur Young & Company. That copy of the letter has been stamped "May 25 Rec'd." When questioned in court,

plaintiffs' counsel could give no explanation for why a letter purportedly prepared in June 1983 had been stamped as being received on May 25. Furthermore, National Union has submitted a letter to the Court written by a San Francisco attorney which National Union believes discusses the date-stamped copy of the Petruzelli letter. That letter suggests that the date-stamped copy of the Petruzelli letter was found among documents belonging to a partner in Arthur Young's Los Angeles office and that at the time in question it was the policy of the partner's secretary to stamp all incoming documents and correspondence when received. The letter also states that the stamp on the Petruzelli letter matches stamps found on other correspondence stamped by the partner's secretary during the same time period. Finally, a letter containing similar information to that contained in the Petruzelli letter and written in language that tracks the Petruzelli letter verbatim was written by Tom Unterman, Osborne's outside counsel, to Mark Pickup of Arthur Young & Company. That letter is dated May 25, 1983, and Mr. Unterman has submitted an affidavit indicating that his letter was in fact written on or about May 25, 1983.

**216**

and act upon information regarding its right to rescind an insurance policy). Moreover, even assuming that an issue of fact exists regarding the reasonableness of the timing of National Union's rescission, the plaintiffs have not shown that they were prejudiced by the alleged delay. Section 1693 of the California Civil Code provides that delay will not preclude rescission unless the delay results in "substantial prejudice." Cal.Civ.Code § 1693 (West 1985); *see also In re Consolidated Pretrial Proceedings in Airwest,* 436 F.Supp. 1281, 1290 (N.D.Cal.1977) (nonrescinding party must assert prejudice caused by unreasonable delay). The only prejudice even asserted by the plaintiffs is the delay in the return of Osborne's $30,000 premium. This hardly constitutes substantial prejudice. The premium would have been returned to Osborne, not the plaintiffs in this action. Moreover, when National Union attempted to return the premium, Osborne refused to take it. Thus, any delay in the return of the premium certainly cannot be said to have prejudiced the plaintiffs or Osborne.

For the reasons given, the Court holds that National Union was entitled to rescind its directors and officers insurance policy issued to Osborne.

IT IS SO ORDERED.